Bill vs. Cohen Ok! Good afternoon, your honors, may it please the court, I'm Michael Swartz and I represent four of the seven directors of Republic First Bank Corp., referred to the majority directors as they are a majority of the board. I respectfully request to reserve three minutes for rebuttal. Ok, that's done. And you know, you can refer to them any way you like, but for my purposes, I'm going to be talking about them as the Monada directors and the other side as the Hill directors, just as an easy shorthand. No problem, your honor. Go ahead, please. This appeal concerns the extraordinary orders of a federal district court, installing a custodian, a litigator, to quote, take control of and quote, unquote, manage a solvent, publicly traded and highly regulated bank organized under the laws of Pennsylvania. This appeal has been expedited because the district court's May 31, 2022 order displaced the company's elected board of directors with a court-appointed custodian to conduct a special shareholder election. We are well familiar with this. Ok, your honor. So, let's dive into this. Part of your argument, a significant part of your argument, has to do with whether the plaintiff had moved for a TRO and a preliminary injunction. Did you forfeit that argument? No. We objected to, first of all, there was no pending motion that was being responded to. The plaintiff had moved for a TRO and a preliminary injunction. That motion was denied. After that happened, the court issued an order requesting evidentiary submissions regarding the appointment of a custodian. No evidence was submitted in connection with, even if the motion had been pending for a preliminary injunction, there was no evidence submitted in connection with that. I probably got ahead of myself because even before that question, preliminary to that is appellate jurisdiction. Yes. What's our ground for jurisdiction here since the statute speaks in terms of receivers and your opponents are quick to say, well, Mr. Putnam is not a receiver, he's a custodian. Yes. There's a difference. Yes. What's your answer? Well, my answer is this court's precedent in Preston Gutman, which expressly states that the name receiver is not what controls. What controls is the function of the judicially appointed officer. Here, the custodian was appointed with the powers of receiver pendent lite, which this court in Preston Gutman has found constituted the powers of a custodian subject to 1292A2. And prior to appellate jurisdiction, there's a matter of subject matter jurisdiction. Yes. I think you argued below that the state law claims substantially predominate in this case, and that seems to me to be true. It seems like the federal claims really make weight. So if they do substantially predominate, and I don't think the district judge even addressed his jurisdiction at all, why should the district court have proceeded at all? Your Honor, we don't think the district court should have proceeded at all. The district court proceeded precipitously. Within hours of the motion for a preliminary injunction being filed in a TRO, we had a hearing. At that point, he was already suggesting a custodian. We had no opportunity to respond. Then he denied the motion, asked for briefing. He jumped right to the custodian, the state law issue. We briefed that. He addressed it. He acknowledged the federal claims, but he never ruled on them. So our position is, as we've stated in our papers, there is no federal subject matter jurisdiction. The court should never reach any of these issues, and the decision should be vacated. Is that your best pitch, subject matter jurisdiction? No. Because if we thought that the 13D claims had some weight to them, or we thought the 14A9 claims had some weight to them, we would move on, right? Yes. That's right. We didn't argue them first. We argued them towards the end of our brief, which probably is on the line with what you're saying. We do believe that position. I want to be clear about that. It's a high hill to climb. We understand that. Okay. Well, then, what is your best argument? Our best argument is that there is no basis to appoint a custodian. There is no deadlock. The primary basis for the appointment of the custodian was a deadlock of the board of directors. Let's get into Section 7 of the bylaws. That's the thing that, speaking for me, is of most interest. The court looked at that and thought that the clarity of the first couple sentences was obscured by the last couple sentences. It's in the record, of course, but the opening of Section 7 of the bylaws says that any vacancies in the board arising from death, resignation, et cetera, and here, sadly, there's the death of Mr. Flacco, shall be filled by a vote of the majority of the board, then in office, even though that majority is less than a quorum. But then it goes on to say, and this is the part that Judge Diamond thought was obscuring the clarity of the first, in the event that at any time a vacancy exists in office of the director that may not be filled by the remaining directors, a special meeting should be held. And he recognizes your argument, I'm saying your client's argument, that you meant it couldn't be filled because, perhaps because of a deadlock or something like that, but could and may, can and may are different things. What's your specific response to that when he says can and may, they don't mean the same thing, so since they're both couched as may, this is a confusing thing and can't really be followed? Well, I would submit that it's a pure error of law in construing the bylaws. May, can, me, can, we cited dictionary definitions and the like, but Judge Diamond didn't consider that. If you read the various sentences in Section 7, the appointment provision that we're talking about, they work together. They work together as we step forth. The first sentence says that upon a death, resignation, et cetera, a majority of the board of directors, then an office, even though that majority is less than a quorum, can fill the vacancy. But it says, other than, except in an increase in the number of directors. Then the second sentence deals with what happens if there's an increase in the number of directors. Well, that requires the entire board. The third sentence goes on to say, in the event that at any time a vacancy exists in any office of a director that may not be filled by the remaining directors, a special meeting of the shareholders shall be held as promptly as possible. Well, there are different reasons why a vacancy may not be filled. It may not be filled because there's just no majority, even under the excused relaxed quorum requirements, or it may not be filled because the board's expanded and there are not enough members to appoint another director. So they all work together, and respectfully, he created ambiguity where there is none. And then, if there is any ambiguity, default Pennsylvania law provides that a majority of directors in office are sufficient to appoint, to replace an appointment director. So either way you cut it, we think it's crystal clear. In fact, the Hill directors don't argue otherwise. They don't attempt to support Judge Diamond's, the conflict he found in the bylaws. I think there is none. I think under well-settled precedents, it all works together under standard cans of construction. So if your reading is correct, there's not much left to this case? We would submit there is not much left to this case. I think that that provision is unmistakably clear. If this board is permitted, the Madonna directors are permitted to ask if the board is permitted to meet, they will fill the vacancy and this company will be removed from custodianship, which under Pennsylvania law is supposed to be a drastic remedy, a remedy of last resort, and then the duly elected shareholders' representatives, the board of directors, can run the company pursuant to the bylaws that the shareholders bought into when they bought stock in the company. I mean, after all, this is a publicly traded company. How does your reading of Section 70 of your bylaws square up, or should we even be paying attention to the Tomlinson case from back in the day? You know, there's a lot of reverence for then-Chancellor Seitz in this court. I can understand that. So why is he wrong when he... He's not wrong. It's a different... I appreciate the reverence. Well, that situation involved two different bylaws that both spoke to filling a vacancy on the board. One said a vacancy shall be filled by the board, and the other said that the vacancy shall be filled by a majority of the directors in office. And how do you reconcile those two? Well, he reconciled the two by saying, well, you can only, only get excused when you can't otherwise find a quorum. That's what they're trying to impose here. But we don't have the same situation as Tomlinson. Here, there's only one bylaw that speaks to how board vacancies are filled upon the death of a board member. There's no conflict like there was in Tomlinson. You don't need to go through these acrobatics. And in fact, other authorities of the Delaware Chancery Court rejected the very, what they call the safety valve argument here. In Delaware law, the default for a quorum is the members of the board, the full board seats, not the members in office. And the plaintiff argued there was a conflict between the default bylaw provision and the replacement provision that said that under Delaware law excuses a quorum requirement to provide, to appoint a replacement director. And the Chancery Court rejected the very argument being made here. They said it's so clear it's beyond discussion that these two, that one statute requires a full board for a quorum, but the other provision providing for the appointment of a replacement excuses that very quorum requirement. They work together, and there's no question. No, Your Honor. I mean, either way, Section 7 expressly provides that there's no quorum requirement. It only reinforces that Section 7, sentence 1, excuses the quorum requirement in Section 15 as you stated. Do you need Section 7 to win? What's your argument under Section 15? Section 15, the argument is that under Pennsylvania law, which applies here, the district court was required to apply the bylaws as written. The court didn't do that. The court rewrote the bylaws, changing. So the majority of directors or the entire board and said, well, it makes more sense of the entire board. Putting aside what anybody thinks what makes more sense, the language as written clearly says a majority of the board, and that is the majority of the board in office. So there is no basis under Pennsylvania law to rewrite a clear Scrivener's error. I'm sorry, to rewrite a bylaw if it's clear. He did finding a Scrivener's error, but you need clear and convincing evidence of the Scrivener's error. There was no clear and convincing evidence. The district court said it would make more sense to read it differently, and he went ahead and did it without authority. And doesn't it make more sense to read it that way? I don't know that it makes more sense. I think there are belt and suspenders statutes. Well, how's that a belt and suspenders? If the word is or, you're saying two contradictory things in the same sentence, aren't you? Maybe I'm getting sort of on time, but on rebuttal, I have a quote that goes to that. I think judicial commentators have lamented that sometimes people put unnecessary belt and suspenders language into provisions that cause confusion. But in any event, I just want to, I know my time, my red lights come on, but when the surpluses argument that was applied by the district court applies when you're reading an actual contract and making sure you give effect to everything, it is not a contract construction, a canon of construction where you can revise language. So my red light's on. I have more to say, but I'll say it on rebuttal. Thank you. Thank you. May proceed. Good morning, Your Honor, and the police, the court, Amit Agrawal appearing on behalf of the plaintiffs. Please. Unless the court would prefer. Otherwise, I'd like to start out by first addressing appellate jurisdiction. Your Honor asked opposing counsel the question about whether the particular custodian who was appointed in this case counts as a receiver within the meaning of section 1292 a two. And our position is not that the label controls this court's analysis. It's that a custodian, including the custodian that was actually appointed here, is a different legal concept that it's governed by typically different statutes. The custodians exercise different functions. Well, this that this this particular custodian, highly respected practitioner, who the district court candidly confessed on the day that the temporary restraining order was sought, the court had him in mind. This this custodian was given virtual carte blanche to control the company. And and how how are your colleagues on the other side wrong when they say that's if anything, that's a receiver. Plus, the point of this appellate jurisdiction statute is to say, if you're going to give extraordinary powers to a receiver, you need to be able to challenge that thing and get immediate review of it. I mean, here, if anything, this is receivership on steroids. So why? Why is their analysis in any way open to question, particularly in light of, you know, with the Pressman got excuse me, President Gottman government decision? So we think that our analysis is not right because they're relying almost entirely on some loose language that appears in the district court's May 26 order announcing its intention to appoint a custodian. But there are a lot of important things that happened after that. The court then asked the parties for briefing on whether the custodian should be appointed. It considered those briefs. And then on May 31st, it issued what we call the empowering order. But please answer the question I'm putting to you. This custodian, as a matter of the court's order, has virtually plenary power over this corporation. It's running the corporation because the district court said there was a deadlock and it wouldn't run otherwise. Am I right about that? We don't agree that the custodian has plenary power to run because to run the corporation. Your Honor, it's he's displaced the board of directors. He's making the decisions, isn't he? That's not what's happening as a practical matter. Well, isn't that what the court's order provides for? Yeah. So I'm happy to engage with the language of the district court's order because I can I can understand why that concern would be present. And I respectfully direct the court's attention to the language on page 27 of the joint appendix, where as opposing counsel points out in paragraph three a the court does say that the duties of the custodian shall include calling and overstaying a special shareholders meeting and then on B, taking any and all lawful actions necessary to manage Republic first in its shareholders best interests. Yeah. That's the language. Yeah. That sounds like really broad language. It sure does. It sounds like you're in charge. And not only does it say you're in charge, but on Friday, the district court said, well, all of this sounds like you're running this whole show. So assume for the sake of argument, we thought that the district court meant what it said. And that's what's happening here. In light of that, why would we be wrong to think, well, this is something that ought to get immediate appellate review? Two answers to that. One is I think you should assume that the district court meant what it said. We would respectfully submit that what it said is subject to interpretation and that the order is most reasonably interpreted to say the custodian is supposed to be keeping this heart of the corporation going. He's supposed to make sure that nothing drastic is happening. Well, Mr. Agrawal, if you're really if your argument is he's just there to to not get in the way of what the board can already do. But it's OK. Don't worry about it. Then how do you explain when all seven directors say, don't hold this meeting until September and Mr. Putnam says, no, I want it in July. And the district court says, yeah, this shareholder meeting is going to happen in July. How does that not amount to evidence we should be paying attention to that shows the district court displaced the board of directors with a custodian and the custodian is exercising those powers? I think your honor is raising a very legitimate concern regarding what the district court is doing, including on Friday. And we're sympathetic to the district court trying to find a solution. But I would like to just I'm glad you're sympathetic, but I'm losing your argument. Appellate jurisdiction. Judge Fitz has got a question, though. No, I'm with you, Judge Jordan. My point goes this. I just I haven't heard from you. Communicate why this custodian should not be viewed as a receiver for purposes of appellate jurisdiction. So I would point the court to the language for the court. I guess our first response to that is the plain language of twelve ninety two eight two. And in particular, the last clause of twelve ninety two eight two, which it seems to us, your honor, is telling us what Congress understood the term receiver to mean for purposes of this provision. And the Congress says that the kind of receivership that it has in mind is one that would culminate in. And I'm quoting now actions directing sales or other dispositions of or other disposals of property. So that's the kind of thing that we think Congress had in mind. So that's that's the only kind of thing that they meant to get at or stuff that's approaching that. And here we just don't understand it's going past that. How about stuff that is even more aggressive than that? So if it was more aggressive than that, then presumably you would be dealing with receiver within the meaning of twelve ninety two. Assume for the sake argument we thought that's where we were and we thought we had appellate jurisdiction. Let's let's get to the merits and talk about Section seven leaving aside all the arguments about evidence and things like that. The evidentiary record, whether the district judge acted precipitously without a record. Just as a pure matter of interpretation of the controlling instruments. If we thought that your opponents were correct about Section seven, that it was not internally inconsistent, but that it meant that with four directors on what then was a seven member board or now is a seven member board, they were entitled to fill that last seat. Is that the end of the case? I don't think so, Your Honor, because we still have the statutory prongs that refer to other kinds of illegality, oppression. So other bases for the appointment of a custodian. We're not predicating our argument just on that one asserted illegality. So then then you're into oppression, etc. The other factors, those other five factors. And if that's where you are, where's the evidence for any of that? Well, even before we get to those factors, we would start with illegality under Article two, Section 15. What's the illegality if they're entitled to fill the board seat? What's the illegality? So it would be the illegality of holding meetings without a quorum. If they're entitled to fill the board seat, don't they necessarily, isn't it implicit in the power to fill the board seat, the power to hold a meeting to fill the board seat? No, that's not our view of Article two, Section seven, Your Honor. You stick with me on my question. My question is assume not your view of seven, but their view of seven. Assume we were persuaded by them that Section seven of the bylaws is not internally inconsistent and that they did have the right to fill the board seat. Implicit in that is there a power to, in fact, hold a meeting to fill the board seat? If their interpretation of Article two, Section seven is correct. I think on Your Honor's hypothetical, yes, we would lose the article. We would lose the argument under Article two, Section seven, and we would still make our separate argument that past actions, not future actions, but past actions, including the removal of Mr. Hill as chair, constituted an illegality within the meaning of 15 Pennsylvania consolidated statutes. If they had the board. I'm sorry, Mr. Agarwal. If they have the board and they've got control, would those past actions, even if not then authorized, not be things that could be ratified by the board? It is possible that that could be ratified. Okay. And then, assuming that were the case, would we be in the situation where, as the Pennsylvania law seems to indicate, the appointment of a custodian being a truly extraordinary remedy of last resort would not be on the table because the board is functioning and it is choosing to ratify, etc.? Do you follow the question I'm trying to ask? You're saying you have these past illegalities. What I'm trying to ask you is, assume that were true, those were past illegalities. If the board can just ratify it, why would there be a need for a custodian? There's still the question, I guess, under the other prongs of the statute, of whether there's the kinds of factors present that might warrant the appointment of a custodian. Give us your best pitch on that. What else do you have that you could say, well, we're in the land of custodians now because this is so extreme, no other remedy would do. I think part of what's under the oppression prong of the statute, what the district court is saying is he believes, on the basis of his preliminary analysis, that the actions that are being taken by the Madonna directors are likely ultraviarious, but even if they're not, that they're unjust, that they would defeat reasonable shareholder expectations about the ways that the highest level of management in a company should be changed. How can that be so if the shareholders, by adopting bylaws that allow the majority of the directors then in office to fill a vacancy, take that step? How can that be oppression? It's provided for in the bylaws if we accept that reading of the bylaws. Because there are procedures that should be taken to protect the public and the shareholders' confidence that decisions are being made for the right reasons and through a reasonable process. What's unreasonable about Section 7 if we read it the way your opponents are suggesting it should be read? That's the default position provided for in the Pennsylvania statute book. What's unreasonable about that? Your argument is, unless I'm completely misunderstanding it, sure, if Section 7 says that and it embodies what the statute says, and they do in fact do what they're entitled to do under that reading of Section 7, that that constitutes oppression. That seems to be where you're going with that, that the shareholders have a right to expect something different than that, that there's something fundamentally unfair about following that route. And I'm trying to tease out of you what it is under these other prongs that Pennsylvania law has for the appointment of a custodian that makes it so that you would say, even Section 7 operating as it's supposedly designed to, according to the other side, and the board following that process, that the shareholders have a reasonable expectation of something different happening. What are you looking at for that? What's the evidence for that? What we're looking at is for the process not to be these meetings being convened in the dead of night with very short notice, with very little opportunity. For example, we talked about in our brief that there's a process that's contemplated about the role that the nominating committee would play and the filling of vacancies. That's not happening. So shareholders have a right to expect... Are you saying that Section 7 has to be read to say before they can fill a vacancy, it has to go through the nominating committee? That's required under the bylaws? We're saying, no, we're not saying that. We're saying that assuming that Your Honor is right for purposes of the hypothetical and that we lose under Article 2, Section 7, that we lose that argument, that there's still a reasonable shareholder expectation that established ways of doing company business will be followed, even if that's not technically required. But we agree, I should stress with the district court's conclusion, that the bylaws do not allow the Medina directors to do what they've done and what they plan to do. So let's get to that. What is it about Section 7 that makes you think, when it says a majority of the board members then in office, whether constituting a quorum of a full board or not, they get to fill a vacancy that is affected by death? What is it about the next sentence after that that makes that first couple sentences so confusing as to be unintelligible and inapplicable? Well, that first sentence refers to a vote of majority. And that sentence, we think, need not and should not be construed to mean that the vote can be held in the absence of a quorum, and particularly when, as here, a quorum is attainable. You know, maybe I don't want to belabor the obvious, and I've already read it into the record, but Section 7 says, and I'm quoting from the district court's own opinion here, which quotes Section 7, a majority of the entire board may fill a vacancy that results from an increase in the number of directors. That's the last sentence in that first part. It can be filled by a vote of the majority of the board then in office, even though that majority is less than a quorum. What's unclear about that? So what we think is unclear, Your Honor, is that it doesn't specifically say that the vote can take place in the absence of a quorum, especially when a quorum is attainable. If it says it can be, it shall be filled. This is not preparatory language. It says the majority is less than a quorum. And you seem to say that, no, you still need a quorum. So, I mean, what you're saying is the majority can be less than a quorum, but you still need a sufficient quorum there before you can take the vote. Is that what you're saying? Yes. If a quorum is attainable, you would still need the majority of the entire board to hold the vote, even if the vote that ultimately is in support of the replacement is less than a majority of the quorum. So you're reading, just to be clear, you're reading the first sentence as basically saying that there still must be a quorum, but the majority can fill the seat even if it would be less than a quorum? We are reading that, although we've allowed for the safety valve possibility that when a quorum is not attainable, that it might be possible to conduct a vote in the absence of a quorum. Okay. Any questions? I see that I'm out of time. I'm happy to answer any other questions that the court might have. Judge Phipps, anything else? Maybe one quick thing. I don't understand your Scrivener's error point. It strikes me for two reasons. One, from what I understand about finding a Scrivener's error, you have to prove that the typo or the mistake was unworkable, not just that it was superfluous. Your argument seems to rest on superfluity. Second, your argument seems to ignore the second half of the first sentence of Section 15, which defines who the majority would be. So to the extent that there's some duplication or some belt and suspenders in the first two, I read this first sentence not being about who constitutes the quorum, but how to determine the majority of the quorum. So it says if it's just a majority of the members present, then the second half kicks in to says the majority will be the majority of those numbers. If it's the entire board, then it's the majority of the entire board. So it doesn't strike me necessarily that this clause is superfluous. But because the whole thrust of this point is to determine who the majority should be, not necessarily who the quorum should be. But so I've got two questions. One, doesn't your theory of Scrivener's error depend on superfluity, not on workability? And two, why doesn't this all read as a whole given the second sentence of the first – the second half of the first sentence of Section 15? So the answer to the first question is that our argument is not based entirely on the canon against superfluity. That is, we think, a relevant consideration. But we also have other arguments that we've made, including structural and contextual arguments. And so, for example, I'd respectfully refer the court to Article 2, Section 7. And the language of Article 2, Section 7 says that you can have two kinds of majorities, a majority of the entire board or a majority of the directors then in office. And that language specifically provides that a majority of the officers then in office may be less than a quorum. That wouldn't make any sense if the Madonna directors are right that a majority – that a quorum can be obtained simply by a majority of the officers then in office. And then in addition to that, we've pointed out that elsewhere in the bylaws, the term members, whenever it's used, is used in connection with other terms. So just the way that this language appears, if you look at its context, our position is that even leaving aside the canon against superfluity, that that language is most reasonably construed to be consistent with states like Delaware, which say that in order to have a quorum, you need a majority of the entire seats on the board. I do have one last question. If we thought that the Madonna directors were right here and that the custodian had been improvidently appointed, what would the appropriate relief be from your perspective? I think if the court's concern was about the scope of the custodian's authority, then you could remand to the district court to either narrow the scope of that authority or to clarify it. No, that's not what I'm asking you to assume. I didn't say assume we were concerned about the scope. Assume that we thought this was an improvident step by the district court and no custodian should have been appointed. If that was where we came out, from your perspective, what would the appropriate relief be? What would our order look like? Assuming appellate jurisdiction, of course. Yes, indeed. The appropriate disposition would be to reverse the order appointing a custodian and then to remand back to the district court for further proceedings that are consistent with the court's opinion, including we would point out that the district court said there's a lot of bad things that might happen in short order, and so it was denying the application for a preliminary injunction and a temporary restraining order provisionally without prejudice. But we think that the case should be returned to the district court with instructions that the district court can determine what, if any, other preliminary relief would be appropriate. And what preliminary relief would be appropriate? What would you be asking for? In other words, this comes down to a pretty simple question in my mind. Was the district court right that they didn't have the board? If they've got the board, if they've got the majority, if they're entitled to fill that seat, and they fill that seat, then they've got control of the corporation, right? So what would the district court be entitled to do at that point? What would we leave for the district court to do to enjoin? Well, on that hypothetical, Your Honor, you wouldn't be enjoining the filling of the vacancy, but we could still allow for the district court to make sure that there's a process for filling the vacancy. That is, the process is in the bylaws. It says the majority. That's what I'm saying. Like, you seem to want to go back into seven, but I'm asking you to get past that for the sake of discussion and just tell us if we thought that the custodian should not have been appointed and it went back, is there something else for the district court to do except to say, well, I'm dismissing this action because they've got control of the board? Are there things that the district court legitimately can and should be looking at? Not to go back and say, well, I know you've got the board, but I'm telling you how to run the board, which is what you seem to be suggesting. Assume they've got control of the board. Are there other things going on in this case that maybe haven't hit my radar that we should be concerned about in sending it back to the district court if that's what we thought was right? You know, if we thought that was the right thing to do, get rid of the custodian, send it back. Are there things that you would say, no, this needs to be in that order to safeguard a legitimate concern of ours? And please don't say, yes, because there's a process for filling that vacancy, because I'm telling you, get past that. I hear what your Honor is saying loud and clear. If the court were to get rid of the custodian, we would want an opportunity to consult with our clients about whether any kind of emergency or preliminary relief would need to be asked for at that stage, and I want to have an opportunity to consult with our clients about that. If the case goes back, I'd like to hear why this court has subject matter jurisdiction. So tell me about your federal claims and why they are in this case, because it sounds to me like a fight under the BCL. I'm sorry, it sounds to you what? This case sounds to me like a fight about what to do under the Pennsylvania BCL. So, Your Honor is right that there are state law claims at issue in the case. We also have two counts of the complaint asserting violations of federal securities laws, and in particular we respectfully suggest that the court focus on the 14A. The proxy. Right, claim, and we think we have substantial arguments for violations of 14A and that this is part of the same kind of common nucleus of operative fact that involves the state law claims, and that at a minimum it would be up to the district court to assess that in the first instance and to determine whether to exercise its discretion to wield supplemental jurisdiction. What was happening at the time that the Madonna directors could have been soliciting in their proxy? What kind of action could they have been soliciting as opposed to complaining about events? So, we cited case law, for example, from the Second Circuit that the question is what reasonable effect it could have on the shareholders who are getting that information, and could it reasonably be construed to induce a vote when the vote takes place? Okay. Okay, thanks very much, Mr. Everwell. We'll go ahead and hear Mr. Swartz's rebuttal. Thank you. Thank you, Your Honors. I want to start where I left off on Section 15, and Judge Phipps, I agree with your interpretation with regard to Section 15, with a majority of the members or the entire board of directors shall be present in person at any meeting of the board so as to constitute a quorum. The majority could modify members or the entire board. If that is the case, that lends itself to an ambiguous interpretation, in which case Pennsylvania default rules would apply, which provides that a majority of directors in office constitutes a quorum. Do we have to worry about Section 15? No. I was going to go to my surplusage point and to address you, Judge Jordan, on that. But, yeah, no. If this Court rules with regard to Section 7, Sentence 1, that a majority in office has the authority to appoint a replacement director, this problem is solved. Why don't you respond to Mr. Agarwal's reading of Section 7, but you may be able to fill it with the vote of those who are still in office, but you still have to have a quorum if a quorum is obtainable. Again, there is a specific bylaw provision that excuses the quorum requirement to provide a replacement director. They say it doesn't. I guess the only way we can look to a prior judicial precedent, and in that I'll refer to the Chelsea Exchange case, which I was talking about before but not by name, with what the plaintiff argued was a conflict in Delaware's statutory default rules, which is a quorum is the entire board, versus the relaxed quorum requirements for appointing a replacement, both Delaware's statutory default rules. They made the same argument in Chancery Court, and it was rejected. It said the chancellor, vice chancellor, I don't recall which one, said basically this is so obvious a point that the quorum requirement is meant to be relaxed in these circumstances. It's beyond discussion. I mean, maybe obviously respectfully the court may not agree with that, but I think it's quite clear that what could that possibly apply to except for relaxing a quorum requirement. That's exactly what it says. I think we need to take it at its word. All right. What should the relief look like if you won the day on Section 7? We think it's critical that the court vacate the appointment of a custodian and rule that the district court erred as a matter of law with regard to the interpretation of the bylaw so that this board of directors has the authority and ability to appoint a replacement. Once that happens, the company is restored to the shareholders. Whatever happens with regard to the other grounds, which I think are insubstantial, don't even meet the standard, that doesn't matter. The board can then function and operate as a board. Your Honor asked, is there anything we need to worry about as to what's going on in the real world with this board? In fact, there was a regularly or there is a regularly scheduled board meeting that was set a while ago for today. The Hill directors are refusing to attend. The board can't conduct business because of this judicially created deadlock. The things that we asked to discuss at this meeting, my clients, the status of the company's first quarter 2022 financial statements still have not come out. What's going on with the 2022 financial statements? Updates on financial performance. There's a lot going on in this economy that my clients feel fiduciary duties to regulate and deal with from the board level. And lastly, I'll note that there's a NASDAQ notice saying that the company is out of compliance because it needs to have a third member of its audit committee, and the Hill directors are refusing to meet to enable that defect to be remedied. So there are serious harms that are being threatened to the company that the board as a board cannot resolve because of the judicial deadlock. All right. Anything else? Judge Phipps, anything? No, nothing. Thank you, Your Honors. Thanks, Mr. Schwartz. We anticipate getting a decision to you rapidly. We know that, as was just outlined, there are some real-world consequences to what's going on, and we will endeavor to get you a response very quickly. Thanks. We'll call our next case.